## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JERRY WELLS, on behalf of himself and all other similarly situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-17-46-D |
| SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD., | ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| VICKY HIGGINBOTHAM, on behalf of herself and all other similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | *Consolidated with* Case No. CIV-17-102-D |
| SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUMG ELECTRONICS CO., LTD.; THE HOME DEPOT, INC.; LOWE'S COMPANIES, INC.; BEST BUY COMPANY, INC.; and SEARS HOLDING CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## CONSOLIDATED COMPLAINT

Plaintiffs Vicky Higginbotham and Jerry Wells ("Plaintiffs") on behalf of themselves and the Class[1] set forth below, allege the following upon information and belief, except for those allegations that pertain to Plaintiffs, which are based on Plaintiffs' personal knowledge.

---

[1] Defined below.

### NATURE OF THE ACTION

1.      Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. ("Samsung") design, manufacture, market, sell, warrant, and service washing machines that are experiencing a high rate of catastrophic failure (the "Defective Washing Machines"). Samsung has admitted that it has received 733 reports of its washing machines coming apart including reports of nine (9) personal injuries.

2.      Samsung has known since at least 2013 that its washing machines violently shake apart, have caused personal injuries and property damage. Samsung has refused to acknowledge or do anything about the Defective Washing Machines until the Consumer Protection Safety Commission (the "CSPC") instituted an investigation. Samsung withheld this information from its consumers, including the Plaintiffs.

3.      On November 4, 2016, Samsung announced that it was "recalling" thirty-four (34) models of washing machine that were defective (the "Recall"). Once the recall terms were announced and after the Recall had begun, consumers who owned the Defective Washing Machines became aware that Samsung could not adequately or timely implement the Recall. Samsung failed to provide adequate disclosure of material facts, as further discussed herein, protection or compensation to the Plaintiffs or the members of the Class for their Defective Washing Machines.

4.      The remedies provided in Samsung's recall bulletin allow consumers the option of any one of the following: (1) an in-home repair or retrofit that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; or (2) a rebate to be applied towards the purchase of a new Samsung or other

brand of washing machine, along with free installation of the new unit and removal of the old unit. *See* Samsung, "Voluntary Recall of Certain Top-Load Washers," *available at* http://pages.samsung.com/us/tlw/index.html.

5.      However, each of these remedies are either not actually being timely, if at all, provided by Samsung to all members of the Class or are inadequate to properly compensate owners of the Defective Washing Machines.

6.      In the meantime, despite being aware of these dangerous Defective Washing Machines and the problems and misrepresentations in the Recall, Samsung and Defendants The Home Depot, Inc. ("Home Depot"), Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Lowe's"), Best Buy Co., Inc. ("Best Buy"), and Sears Holding Corporation ("Sears")[2] have continued to sell the Defective Washing Machines to the public without warning.

7.      Samsung has been caught selling a product that it knew was defective and dangerous at least four (4) years ago, and Samsung and the remaining Defendants continued to sell these products while failing to provide adequate disclosure or compensation to members of the Class who have been damaged by the seemingly commonplace act of purchasing a washing machine.

8.      Plaintiffs therefore respectfully request that this Court enjoin Defendants from further sales of the 34 models of washing machine that are at issue in this litigation, ensure that Samsung is not destroying evidence related to the Defective Washing

---

[2] Home Depot, Lowe's, Best Buy, and Sears are collectively referred to herein as "The Retailers."

Machines, order Defendants to inform all potential Class members of the pendency of this litigation, order that Samsung is liable for all property damage and personal injury when the Defective Washing Machines explode in the future, hold that consumers are allowed to rescind their purchase of the Defective Washing Machines, and declare the recall inadequate as a matter of law.

9.     Plaintiffs further seek money damages on behalf of themselves and the members of the Class. They should receive full refunds as the Defective Washing Machines cannot be safely used for the purpose which they were intended when marketed and sold. In the alternative, Plaintiffs should, at the very least, receive the difference in value between a functioning washing machine of similar or equal value to the purchase price of their Defective Washing Machines and all consequential damages. Plaintiffs further seek money damages for personal injuries and property destroyed by the Defective Washing Machines, time spent by members of the Class seeking to negotiate Samsung's byzantine recall process, and money damages suffered by members of the Class as a result of their being unable to use their Defective Washing Machines.

## THE PARTIES

10.     Plaintiff Vicky Higginbotham is a citizen of the State of Oklahoma, and is a resident of this District in Purcell, Oklahoma. In August 2016, Plaintiff Higginbotham purchased one of Samsung's Defective Washing Machines (Model number WA56H9000AP/A2; Serial number 0BG15AEH300860J) from a Best Buy store in Norman, Oklahoma.

11.     At the time of purchase, Higginbotham's Samsung washing machine was new, in excellent condition and without any perceivable damage or defect.  Moreover, Higginbotham used her Defective Washing Machine solely for its intended purpose as a personal home appliance.   Higginbotham operated her Defective Washing Machine with minimal problems or malfunctions prior to the recall, but shortly after her purchase, she became aware that the Defective Washing Machines were malfunctioning. On October 4, 2016, she sought help from the Best Buy store from whom she had purchased the washing machine. Best Buy provided her with a statement explaining that the Samsung washing machines were potentially defective, that Samsung was in discussions with the Consumer Product Safety Commission about this problem, and that she should contact Samsung. Higginbotham was shocked to learn from this exchange that Best Buy had sold her a product knowing that it was potentially defective.

12.     Pursuant Best Buy's recommendation, Higginbotham contacted Samsung to have her two (2) month old washing machine replaced. After multiple phone calls and countless hours, Samsung refused to replace her washing machine or provide her with a full refund.

13.     Plaintiff Jerry Wells is a citizen of the State of Oklahoma, and is a resident of this District in Edmond, Oklahoma. In November 2012, Plaintiff Wells purchased one of Samsung's Defective Washing Machines (Model number WA456DRHDWR/AA; Serial number YOIX5AEC901647W) from a Lowe's store in Edmond, Oklahoma.

14.     Plaintiff Wells sought to have his Defective Washing Machine repaired per the terms of the Recall.  However, Wells has been scheduled for the in-home modification

of his Samsung washing machine on three separate occasions, November 18, 2016, December 9, 2016, and December 12, 2016. In each such instance, Samsung (or its agent) never appeared at Wells' residence to make the in-home modification of Wells' Defective Washing Machine. No representative of Samsung contacted Wells, they merely did not show up.

15.     Defendant Samsung Electronics Co., Ltd. is a South Korean corporation located in Seoul, South Korea.  On information, and belief, Samsung Electronics Co., Ltd. designs, manufactures, and distributes the Defective Washing Machines as described herein for sale in this District.  At all times relevant hereto, Samsung Electronics Co., Ltd. was in the business of distributing, marketing, promoting, and selling the Defective Washing Machines described herein throughout the United States and in this District. Thus, Samsung Electronics Co., Ltd. purposely directed its conduct toward this District and at all times relevant engaged in a continuous course of business in this District by selling thousands of its washing machines and other consumer goods in this District every year.

16.     Defendant Samsung Electronics America, Inc. is a New York corporation that is a wholly-owned subsidiary of Samsung Electronics Co., Ltd., with its headquarters in Ridgefield Park, New Jersey.  Samsung Electronics America, Inc. is the warrantor of the products designed, manufactured, and distributed by Samsung Electronics Co., Ltd., and acts as Samsung Electronics Co., Ltd.'s agent in the processing of warranty claims related to defects in the manufacturing or materials used by Samsung Electronics Co., Ltd. during the manufacturing process.  At all times relevant hereto, Samsung Electronics America,

Inc. was in the business of distributing, marketing, promoting, and selling the Defective Washing Machines described herein throughout the United States and in this District. Samsung Electronics America, Inc. engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

17.     The Home Depot, Inc. is a Delaware corporation with its headquarters in Atlanta, Georgia.  At all times relevant hereto, The Home Depot was in the business of distributing, marketing, promoting, and selling the Defective Washing Machines described herein throughout the United States and in this District.   The Home Depot engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

18.     Lowe's Companies, Inc., is a North Carolina corporation with its headquarters in Mooresville, North Carolina.  At all times relevant hereto, Lowe's was in the business of distributing, marketing, promoting, and selling the Defective Washing Machines described herein throughout the United States and in this District.   Lowe's engages in a continuous course of business in this District, and based upon information and belief sells thousands of washing machines and other consumer goods in this District on an annual basis.

19.     Lowe's Home Centers, LLC, is a North Carolina limited liability corporation with its headquarters in Wilkesboro, North Carolina.  Upon information and belief, Lowe's Home Centers, LLC's managers are Lowe's Companies, Inc., Ricky Damron, Robert Hull,

Ross McCanless, Robert Niblock, and Jennifer Weber. Upon information and belief, all of the managers of Lowe's Home Centers, LLC, aside from Lowe's Companies, Inc., are officers of Lowe's Companies, Inc. Upon information and belief, all managers of Lowe's Home Centers, LLC are citizens of the state of North Carolina. At all times relevant hereto, Lowe's was in the business of distributing, marketing, promoting, and selling the Recalled Washing Machines described herein throughout the United States and in this District. Lowe's engages in a continuous course of business in this District and, based upon information and belief, sells thousands of washing machines and other consumer goods in this District on an annual basis.

20.    Best Buy Co., Inc. ("Best Buy"), is a Minnesota corporation with its headquarters in Richfield, Minnesota.  At all times relevant hereto, Best Buy was in the business of distributing, marketing, promoting, and selling the Defective Washing Machines described herein throughout the United States and in this District.   Best Buy engages in a continuous course of business in this District, and based upon information and belief, sells thousands of washing machines and other consumer goods in this District on an annual basis.

21.    Sears Holding Corporation ("Sears")[3] is a Delaware corporation with its headquarters in Hoffman Estates, Illinois.  At all times relevant hereto, Sears was in the business of distributing, marketing, promoting, and selling the Defective Washing Machines described herein throughout the United States and in this District.  Sears engages

[3] Samsung, Lowe's, The Home Depot, Best Buy, and Sears are referred to collectively herein as "Defendants."

in a continuous course of business in this District, and based upon information and belief, sells thousands of washing machines and other consumer goods in this District on an annual basis.

## JURISDICTION AND VENUE

22.    This Court has original jurisdiction over this Class action pursuant to 28 U.S.C. § 1332(d)(2). The claims of the Class members are in excess of $5,000,000 in aggregate, exclusive of interest and costs, and at least one member of the Class is a citizen of a state different from at least one of the Defendants. For example, Plaintiffs Wells and Higginbotham are Oklahoma Citizens and none of the Defendants are citizens of the state of Oklahoma.

23.    The United States District Court for the Western District of Oklahoma has jurisdiction over Defendants because they transact business in Oklahoma, have purposely availed themselves of the laws of Oklahoma, and because a substantial part of the events giving rise to Plaintiffs' causes of action occurred in Oklahoma. In addition, Defendants have agreed to litigate this action in Oklahoma. [Dkt. No. 8]. In addition, Plaintiffs both reside in this District. Therefore venue is appropriate pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

24.    This action relates to certain defective Samsung home washing machines that have an inherently dangerous defect. These washing machines literally shake themselves apart, suffering catastrophic failure during a given machine's normal usage because of a design defect and/or manufacturing flaw. The resulting catastrophic failure has, as Samsung knows, caused personal injury and property damage.

25.     Samsung knew of this design defect since at least 2013, but, until being forced, did nothing to address the problem. Due to an investigation by the Consumer Product Safety Commission (the "CPSC"), on November 4, 2016, Samsung began a recall (Recall # 17-028) of 34 distinct models (the "Recalled Washing Machine(s)"), all being models of Samsung top-load washing machines, including the models purchased by Plaintiffs. The models of Samsung's Defective Washing Machines include the following[4]:

| | | |
|---|---|---|
| WA40J3000AW/A2 | WA45H7000AP/A2 | WA45H7000AW/A2 |
| WA45H7200AW/A2 | WA45K7600AW/A2 | WA45K7100AW/A2 |
| WA48H7400AW/A2 | WA48J7700AW/A2 | WA48J7770AP/A2 |
| WA48J7770AW/A2 | WA50K8600AV/A2 | WA50K8600AW/A2 |
| WA52J8700AP/A2 | WA52J8700AW/A2 | WA400PJHDWR/AA |
| WA422PRHDWR/AA | WA456DRHDSU/AA | WA456DRHDWR/AA |
| WA476DSHASU/A1 | WA476DSHAWR/A1 | WA484DSHASU/A1 |
| WA484DSHAWR/A1 | WA48H7400AP/A2 | WA50F9A6DSW/A2 |
| WA50F9A7DSP/A2 | WA50F9A7DSW/A2 | WA50F9A8DSP/A2 |
| WA50F9A8DSW/A2 | WA52J8060AW/A2 | WA5451ANW/XAA |
| WA5471ABP/XAA | WA5471ABW/XAA | WA56H9000AP/A2 |
| WA56H9000AW/A2 | | |

26.     The stated reason for the recall is that "[t]he [Samsung] washing machine top can unexpectedly detach from the washing machine chassis during use, posing a risk of injury from impact." The recall bulletin further notes that "Samsung has received 733 reports of washing machines experiencing excessive vibration or the top detaching from the washing machine chassis. There are nine related reports of injuries, including a broken jaw, injured shoulder, and other impact or fall-related injuries." *See* Samsung, "Voluntary Recall of Certain Top-Load Washers," *available at* http://pages.samsung.com/us/tlw/index.html; *see also* CPSC, "Samsung Recalls Top-Load

---

[4] All of the models listed below are referred to herein as the "Defective Washing Machines."

Washing    Machines    Due    to    Risk    of    Impact    Injuries," *available    at*
http://www.cpsc.gov/Recalls/2017/Samsung-recalls-Top-Load-Washing-Machines.

27.     The Defective Washing Machines at issue range in price from approximately

$549.00 to $1,500.00 and come with an express one-year manufacturer's warranty.

**A.     The Defective Washing Machines**

28.     The Defective Washing Machines at issue in this action literally shake

themselves to pieces. Once they do so, they are irreparable. In fact, the force of an incident

is so great that individuals nearby have been injured. These Defective Washing Machines

have also flooded homes and caused property damages, including busting large holes in

sheet rock, from the excessive vibration and when they break apart. They are unsafe for the

use for which they were marketed and sold to consumers. They are certainly unsafe in a

domestic location, such as a home.  Below is a photograph of one of the Defective Washing

Machines that exploded on a potential Class member in Georgia:



29.     The Defective Washing Machines have at least four (4) inherent design defects that cause them to come apart at the seams:

     a.  The assembly dampers cannot keep the tub in place and become unfastened during the spin cycle;

     b.  The motor is too powerful for the casing of the machines, causing it to spin the tub out of control;

     c.  The unbalanced load warning mechanism fails to detect the unbalanced load and stop the machine from spinning until it shakes the machine apart; and

     d.  The exterior lid of the machine is defective as it releases with extreme force under normal operation.

30.     The defects in the Defective Washing Machines are latent defects respecting the design of the machines and/or the manufacturing process related to the Defective Washing Machines and such defects, although known or reported to the Defendants, would not reasonably be discoverable by consumers when purchasing any of the Defective Washing Machines.  These latent defects relate principally to the Defective Washing Machines having structural and design defects in their framing and dampening systems which can cause the tubs to loosen and become violent projectiles over time.  Such defects in the Defective Washing Machines manifest only after the point of sale and such manifestation often occurs outside of Samsung's express warranty period of one year.

31.     Each of the defects existed at the point of sale, meaning they are inherent to the design and/or manufacture of the Defective Washing Machines. They are not defects

that consumers could have known about unless they were warned about them by Samsung or the other Defendants. Consumers are unable to inspect the interior of the Defective Washing Machines to determine that their design or manufacture has been adequate, nor are consumers expected to have the expertise to do so. As a result, these defects were not apparent to consumers until after the Defective Washing Machines had already been purchased and taken home.

32.     In selling the Defective Washing Machines, Samsung provided a uniform, express one-year factory warranty against manufacturing defects in materials and workmanship.  This express warranty further protects against defects in the tub for three years, as well as defects in the direct drive system for 10 years.  The warranty for the Defective Washing Machines is offered on a take-it-or-leave-it basis, and consumers are not afforded an opportunity to negotiate for more favorable terms in the warranty because of the parties' relative bargaining power.

33.     In addition to the express warranty described above, Defendants marketed, advertised, and warranted that the Defective Washing Machines were of merchantable quality and fit for their intended purpose.  Defendants further marketed, advertised, and warranted that the Defective Washing Machines were free from defects and the Defective Washing Machines did not pose an unreasonable risk to persons or property.

34.     Samsung knew of the defects in the Defective Washing Machines as early as 2011, when it first began to receive reports that they shook violently and even came apart. Defendants knew the Defective Washing Machines were capable of causing injury to consumers since October 24, 2013, when a California woman was injured by a model

number WA50F9A6DSW/A2 Defective Washing Machine. Samsung inspected her Defective Washing Machine on November 22, 2013.

35.     Despite this knowledge, Defendants continue to sell the Defective Washing Machines without warning consumers or instituting an effective recall to repair or replace the Defective Washing Machines. In fact, the Recall that was implemented on November 4, 2016, has merely provided further evidence of Samsung's unwillingness to accept responsibility for designing, manufacturing and selling the Defective Washing Machines and make consumers whole. In the meantime, The Retailers have continued to sell the Defective Washing Machines to consumers, knowing that these machines were materially defective and potentially dangerous.

**B.      The Recall**

36.     Samsung finally announced a recall after the CPSC instituted an investigation into the Defective Washing Machines. The Recall was announced on November 4, 2016, more than three (3) years after the first physical injury caused by the Defective Washing Machines and nearly six (6) years after Samsung first had notice of the defects. *See* Samsung, "Voluntary Recall of Certain Top-Load Washers," *available at* http://pages.samsung.com/us/tlw/index.html; *see also* CPSC, "Samsung Recalls Top-Load Washing Machines Due to Risk of Impact Injuries," *available at* http://www.cpsc.gov/Recalls/2017/Samsung-recalls-Top-Load-Washing-Machines.

37.     While Samsung claims to offer two (2) remedies for consumers who purchased the Defective Washing Machines, the CPSC claims that consumers should contact Samsung regarding three (3) potential remedies.

38.     Samsung offered its consumers the following "two easy choices as part of the recall program":

- ■ The first option is a free in-home repair that includes reinforcement of the washer's top. Consumers who choose the in-home repair will receive a free one-year extension of the manufacturer's warranty, regardless of the age of their washer.

- ■ The second option is a rebate that can be applied towards the purchase of a new washer from Samsung or other brand. Consumers who choose this option will also be reimbursed for any installation and removal fees charged by the retailer. The rebate amount is based on the model and manufacture date of the recalled washer. Consumers who choose a Samsung washer will receive an additional loyalty incentive up to $150 toward their new Samsung washer purchase.

*See* Samsung, "Voluntary Recall of Certain Top-Load Washers," *available at* http://pages.samsung.com/us/tlw/index.html.

39.     Inconspicuously, below the above text, Samsung further states, "Additionally, consumers who purchased a recalled washer in the last 30 days of this recall announcement are eligible for a full refund from their original place of purchase."

40.     Contradicting Samsung's statement, the CPSC claims the following:

Consumers should contact Samsung immediately to receive one of the following remedy options. Consumers can choose (1) a free in-home repair that includes reinforcement of the washer's top and a free one-year extension of the manufacturer's warranty; (2) a rebate to be applied towards the purchase of a new Samsung or other brand washing machine, along with free installation of the new unit and removal of old unit; or (3) a full refund for consumers who purchased their washing machine within the past 30 days of the recall announcement.

*See* CPSC, "Samsung Recalls Top-Load Washing Machines Due to Risk of Impact Injuries," *available at* http://www.cpsc.gov/Recalls/2017/Samsung-recalls-Top-Load-Washing-Machines.

41.    While the CPSC claims that Samsung offers three (3) remedies, Samsung only offers two (2) while stating that individuals who purchased within 30 days of the recall announcement should contact the store where it was purchased about getting a refund. The fact that Samsung is incapable of coordinating its recall with the CPSC is merely the first indication of the fraud that the Recall is upon consumers.

42.    In addition to the two remedies that Samsung has offered consumers, they also claim to provide "all known washer owners [with a]….Home Label Kit in the mail. The kit will include a new control panel guide, two warning labels and step-by-step instructions for applying them to the machine, and a user supplement. *See* Samsung, "Voluntary    Recall    of    Certain    Top-Load    Washers,"    *available    at* http://pages.samsung.com/us/tlw/index.html.

43.    The Home Label Kit relabels the settings on the Defective Washing Machine. It removes, to the eye at least, the option to wash garments on the Defective Washing Machine's highest spin cycle settings. However, this Home Label Kit is completely ineffective as the Defective Washing Machines can shake themselves apart even on the lower settings. For example, one proposed Class member in San Antonio, Texas applied the Home Label Kit, used the Defective Washing Machine in accordance with the warnings provided by Samsung, and her Defective Washing Machine shook itself apart anyways. Below is a picture of the damage:



44.     In addition to the recall notices from Samsung and the CPSC being unclear as to what remedies are available to consumers, the Recall has been a disaster, beginning with Samsung's provision of notice to "all known washer owners" as claimed in their recall notice. *Id.*

45.     For example, Plaintiff Wells was never contacted about his ownership of a Defective Washing Machine. It was not until he saw news coverage of the Recall that he discovered the CPSC's notice and contacted Samsung.

### i. The Repair Option

46.     Samsung's repair option does not actually repair the Defective Washing Machines. Samsung is attempting to use a Band-Aid to cover a bullet wound. In essence, Samsung bolts a new lid onto the Defective Washing Machine and tells consumers not to use all of the Defective Washing Machines' features, even though those features were paid for by consumers. It is not clear whether the repair has any impact on the Defective Washing Machines' propensity to come apart at the seams or not.

47.     Rather than sending a qualified appliance repair person to evaluate consumers' Defective Washing Machines, in an effort to reduce costs or to save money, Samsung has contracted with local entities to reinforce or replace the lid of the Defective Washing Machines with a retrofit. Instead of using appliance repair companies to institute the retrofit, Samsung has hired local subcontractors who are essentially handymen. For example, in many areas, Samsung is using DISH subcontractors (whose job primarily consists of installing television satellite dishes on residences) to install the new washing machine lids.

48.     Samsung's repair option does not use individuals qualified to repair or evaluate the safety of the Defective Washing Machines. The repairmen simply come to your house, if you are one of the fortunate few who have a repairmen show-up, and snap on a new lid. Several consumers have claimed the process takes less than fifteen (15) minutes. Other consumers have claimed that the individual who has arrived to implement the repair did not know how to remove the old lid to replace it with a new one, so the consumer has shown them how to do it.

49.     It is difficult, if not impossible, to get Samsung to provide the repair option. For example, Plaintiff Wells sought to have his Defective Washing Machine repaired per the terms of the Recall.  However, Wells has been scheduled for the in-home modification of his Samsung washing machine on three separate occasions, November 18, 2016, December 9, 2016, and December 12, 2016. In each such instance, Samsung (or its agent) never appeared at Wells' residence to make the promised in-home modification of Wells' Defective Washing Machine. No representative of Samsung contacted Wells, they merely did not show up.

50.     Another consumer from outside of Wichita, Kansas attempted to schedule her Defective Washing Machine for repair with Samsung, only to be informed that Samsung was not repairing Defective Washing Machines in her area and that her only option was to accept the rebate.

51.     As stated above, even once the repair has been completed, consumers are still unable to use their Defective Washing Machines as they were marketed. As part of the repair, Samsung provides consumers with a home label kit (the "Home Label Kit").

52.     The Home Label Kit is a replacement control panel that disables consumers' ability to wash bedding and other bulky items such as towels and replaces it with a setting approximate to the delicate cycle. This new cycle is misleadingly labeled, the BEDDING/WATERPROOF cycle. This label is misleading as it seems to indicate that this cycle is appropriate for washing bedding and waterproof garments, when in fact it is not. The lower spin of the "new" BEDDING/WATERPROOF cycle means that bulky items are not cleaned appropriately or in the manner in which Samsung marketed the Defective

Washing Machines. A large warning label is then placed on the Defective Washing Machine telling consumers not to wash bedding or water resistant material on any cycle aside from the BEDDING/WATERPROOF cycle.

53.     For many, this presents an untenable situation. For example, one potential Class member from North Carolina reported that she was caring for her elderly mother who is incontinent. Her mother's bedding must be washed multiple times per day, and washing her bedding on a lower cycle did not sufficiently clean the bedding.

54.     Samsung's repair does nothing to eliminate the inherent defects of the Defective Washing Machines. In theory, it merely makes it somewhat less likely that the Defective Washing Machines will "blow their lid." It is unclear if the repair even reaches this low bar, as multiple potential members of the Class have reported that their Defective Washing Machines shake violently and fall apart, even after the repair has been implemented.

55.     Samsung never informs purchasers of the Defective Washing Machines that the repair does not actually restore the machines to their design specifications and that the Home Label Kit's purpose is to keep them from using the Defective Washing Machine in a manner in which it was intended when marketed by Samsung and purchased by the consumer. The 1,100 revolution per minute spin cycle is no longer available to the consumer who chooses the repair option.

### ii. The Rebate Option

56.     The rebate option offered by the Recall is just as flawed as the repair option. Samsung uses a depreciation scale to assess the value of each consumer's Defective

Washing Machine. Samsung claims the rebate is based on the market value of the Defective Washing Machine, but this cannot be true since the market value for the Defective Washing Machines is $0. *See* Frequently Asked Questions Q4, http://pages.samsung.com/us/tlw/index.html. On the other hand, the fair market value of similar models of washing machines made by Samsung's competitors (*i.e.*, washing machines that are not defective) is much higher than what Samsung is offering pursuant to the Recall.

57.     For example, consumers have been offered as little as $24 for their Defective Washing Machines. Some people who have owned their Defective Washing Machines for less than a year have received offers of less than half of what they paid for their Defective Washing Machines brand new.

58.     The value offered by Samsung is clearly artificially low and does not give consumers enough compensation to replace their Defective Washing Machines, especially when you consider that most individuals purchase a washing machine expecting it to last for a decade or more.

59.     In addition to the low value Samsung is providing for their Defective Washing Machines, Samsung refuses to cover costs caused by their Defective Washing Machines. For example, many members of the potential Class have spent hundreds of dollars on laundromats and / or washing machine rental fees because their Defective Washing Machine is unusable. Other potential Class members have had property damage caused by the normal use of the Defective Washing Machines that Samsung refuses to pay for.

### iii. The Refund Option

60.     The refund option is not really an option at all. Although the CPSC recall notice says that Samsung will provide "a full refund for consumers who purchased their washing machine within the past 30 days of the recall announcement," when consumers contact Samsung to take advantage of this option, they are simply referred back to the store from which it was purchased.

61.     Whether or not the store provides a refund is simply based upon that store's refund policy and the mood of the manager that day.

### C.     The Retailers

62.     While the brunt of the blame for this debacle is certainly Samsung's to bear, The Retailers have made themselves part of the problem. Once the recall was announced, The Retailers continued to sell the Defective Washing Machines to consumers without a warning as to their recall status. For example, the below photograph was taken at a Lowe's store in Oklahoma City, Oklahoma on February 8, 2017, two months after the Recall was announced:



63.     The above photo is of Samsung Model No. WA40J3000AW/A2 which was being sold by Lowe's without any warning to consumers as to its recall status more than three months after the recall was announced. Upon information and belief, all of The Retailers continued to sell the Defective Washing Machines to consumers while failing to notify them of the Recall long after the Recall had been announced.

64.     As sellers of washing machines in general and the Defective Washing Machines specifically, The Retailers have a duty to take reasonable steps to avoid providing consumers with a dangerous and defective product. The Retailers failed to take such action, and continued to sell the Defective Washing Machines well after the Recall was announced to the detriment of consumers.

## CLASS ALLEGATIONS

65.     Plaintiffs bring this suit as a Class action on behalf of themselves and on behalf of others similarly situated pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3) (the "Class").  The proposed Class consists of:

All residents of the United States and its territories or possessions who purchased a new Defective Washing Machine or otherwise acquired a Defective Washing Machine, primarily for household use and not for resale.

66.     In the alternative, Plaintiffs propose multiple Classes of:

All residents of [a given state or states] who purchased a new Defective Washing Machine or otherwise acquired a Defective Washing Machine, primarily for household use and not for resale.

67.     Excluded from both definitions are Defendants, their officers, directors, and employees, and any entity in which Defendants have a controlling interest or which has a controlling interest in any Defendant, and those entities' officers, directors, and employees; the judge assigned to this case and his or her immediate family; all expert witnesses in this case, and all persons who seek to be excluded from the Class in a timely fashion.

68.     The members of the Class are so numerous that joinder is impracticable. Samsung is one of the largest manufacturers of residential washing machines in the world and it sells many thousands of residential washing machines annually in the United States through retailers such as Lowe's, The Home Depot, Best Buy and Sears. According to the CPSC, approximately 2.8 million Defective Washing Machines have been sold.

69.     Plaintiffs' claims are typical of the claims of the entire Class because Plaintiffs each purchased a new Defective Washing Machine and their interests are the same as all members of the Class they seek to represent. All Plaintiffs' claims arise out of the same set of facts and conduct as all other Class members. All of the claims of Plaintiffs and the proposed Class arise out of Defendants' placement of a product into the stream of commerce that is inherently defective and unsafe. All of the claims of Plaintiffs and proposed Class members arise out of the fact that Defendants failed to disclose the known defects and safety risks of the Defective Washing Machines. Defendants' conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Defective Washing Machines was targeted at Plaintiffs and the proposed Class.

70.     Plaintiffs will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4).  Plaintiffs

have no interests antagonistic to those of other Class members.  Plaintiffs are committed to the vigorous prosecution of this action and have retained counsel experienced in litigation of this nature to represent them.

71.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

a.    whether the Defective Washing Machines pose unreasonable safety risks to consumers;

b.    whether Defendants knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c.    whether Defendants concealed the safety risks that the Defective Washing Machines pose to consumers;

d.    whether the safety risks that the Defective Washing Machines pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a washing machine;

e.    whether the Defective Washing Machines possess material defects;

f.    whether Defendants knew or should have known of the inherent defects in the Defective Washing Machines when it placed them into the stream of commerce;

g.    whether Defendants concealed the defects from consumers;

h.    whether the existence of the defects are material facts reasonable purchasers would have considered in deciding whether to purchase a washing machine;

i.    whether the Defective Washing Machines are merchantable;

j.    whether the Defective Washing Machines are fit for their intended use;

k.      whether Defendants were unjustly enriched by the sale of defective Recalled Washing Machines to the Plaintiffs Class;

l.      whether any false warranties, misrepresentations, and material omissions by Samsung concerning its Defective Washing Machines caused Class members' injuries; and

m.      whether Defendants should be enjoined from further sales of the Defective Washing Machines.

72.     Defendants have acted on grounds that apply generally to the Class, so declaratory relief is appropriate for the entire Class under Federal Rule of Civil Procedure 23(b)(2). Defendants made warranties and representations to the entire Class. Defendants concealed facts from and made material misrepresentations to the entire Class.

73.     Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Defendants are sophisticated and have substantial resources while the members of the Class do not. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a Class Action is superior to other methods, including the Recall, for adjudication of this controversy, as joinder of all Class members is impractical. Defendants have acted uniformly towards Class members. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a Class action.

74.     Class members have suffered and will suffer irreparable harm and damages as a result of Defendants' wrongful conduct.

75.     There will be no undue difficulty in the management of this litigation as a class action. The proposed Class is ascertainable and it is feasible to administrate the proposed Class. The Class can be determined via receipts, ownership documentation, photographs, and the records of Defendants.

## ESTOPPEL, FRAUDULENT CONCEALMENT, AND STATUTES OF LIMITATIONS

### A.     Estoppel

76.     Samsung was and is under a continuing duty to disclose to Plaintiffs and the Class the true nature of the Defective Washing Machines. Samsung intentionally concealed the true character, quality, and nature of the Defective Washing Machines and continues to do so. Samsung knew of the defects in the Defective Washing Machines and intentionally and actively concealed them. Samsung has known since, at least, October 24, 2013, of the alleged inherent defects in the Defective Washing Machines. Plaintiffs and the Class reasonably relied upon Samsung's intentional representations designed to conceal the defects. As a result, Samsung is estopped from relying on any statute of limitations in defense of this action.

77.     Samsung is further estopped from raising any defense of laches as a result of its conduct.

### B.     Fraudulent Concealment

78.     Any statute of limitations has been tolled by Samsung's intentional and ongoing concealment of the facts as alleged in this Complaint. Samsung was and continues

to be under a duty to disclose to Plaintiffs and the Class the truth regarding the Defective Washing Machines and their latent defects. Samsung concealed these latent defects and placed the Defective Washing Machines into the stream of commerce causing Plaintiffs and the Class to believe they were safe and suitable for use. Plaintiffs and the Class reasonably relied upon Samsung's concealment of the facts regarding the Defective Washing Machines. Had Plaintiffs or any member of the Class known of the defects and the risks involved with the purchase of a Defective Washing Machine, they would have never made such a purchase and they would have brought these claims prior to the present action. Plaintiffs and the class could not have discovered the true nature of the Defective Washing Machines as they were kept in ignorance by Samsung.

**C.     Discovery Rule**

79.     The causes of action alleged herein accrued upon discovery of the latent and inherent defects in the Defective Washing Machines. Plaintiffs and Class members could not have discovered the hidden defects in Defective Washing Machines through the use of reasonable and thorough care or investigation. As a result of Samsung's concealment of the defects in the Defective Washing Machines, Plaintiffs and the Class members could not have uncovered a factual basis for a cause of action against Samsung.

<u>**FIRST CAUSE OF ACTION**</u>
*BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AGAINST ALL DEFENDANTS*

80.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

81.     The Defective Washing Machines owned by Plaintiffs and Class members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

82.     These defects were present at the point of sale of the Defective Washing Machines.

83.     Such defects place consumers and the public at serious risk to their own safety when the Defective Washing Machines are used in consumers' homes.

84.     At all times relevant hereto, Samsung, Lowe's, The Home Depot, Best Buy, and Sears were under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Samsung, Lowe's, The Home Depot, Best Buy and Sears, on the one hand, and Plaintiffs and Class members, on the other.

85.     Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability in that the Defective Washing Machines were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used (safely washing clothes in a residential setting), and failed to conform to the standard performance of like products used in the trade.

86.     Defendants knew or should have known that the Defective Washing Machines pose a safety risk and are defective and knew or should have known that selling

the Defective Washing Machines to Plaintiffs and Class members constituted a breach of the implied warranty of merchantability. In fact, upon information and belief, at the time of filing of this Complaint, Lowe's, The Home Depot, Best Buy and Sears are still selling the Defective Washing Machines without warning consumers of the recall. Despite the recall notice and multiple lawsuits having been filed, Defendants continue to place the Defective Washing Machines into the stream of commerce.

87.     As a direct and proximate result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs and Class members bought the Defective Washing Machines without knowledge of their defects or their serious safety risks.

88.     As a direct and proximate result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs and Class members purchased unsafe products which could not be used for their intended purpose including, but not limited to, washing bedding, water-resistant items, and bulky items in a residential setting.

89.     As a direct and proximate result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs and Class members have suffered damages and did not receive the benefit of their bargain.

90.     Defendants were unjustly enriched by keeping the profits for the Defective Washing Machines while never having to incur the cost of repair, replacement, retrofit, or implementing an adequate recall.

91.     The defectively designed Defective Washing Machines purchased by Plaintiffs and all other Class members are unfit for their intended and ordinary purposes

because they are prone to violently shake apart when operated as instructed and intended by Defendants.

92. As a direct and proximate result of Defendants' breaches of the implied warranty of merchantability, Plaintiffs and all the Class members have suffered loss.

## SECOND CAUSE OF ACTION
### *STRICT LIABILITY AGAINST ALL DEFENDANTS*

93. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

94. Samsung is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling home appliances, and did design, manufacture, distribute, advertise, market, promote and/or sell the Defective Washing Machines at issue herein.

95. All Defendants are in the business of distributing, advertising, marketing, promoting, and/or selling home appliances, and did, distribute, advertise, market, promote and/or sell the Defective Washing Machines at issue herein.

96. The Defective Washing Machines were expected to, and did, reach Plaintiffs and Class members without substantial change in the condition in which they were manufactured, sold and distributed.

97. The Defective Washing Machines were in a defective and unreasonably dangerous condition when they left Defendants' possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended.

98.     Plaintiffs and Class members used the Defective Washing Machines in a manner reasonably intended by Defendants.

99.     The Defective Washing Machines were defective because they were not safe for ordinary and intended use. Defendants failed to provide Plaintiffs and Class members either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the Defective Washing Machines. The Defective Washing Machines contained material design, materials, and manufacturing defects and were not reasonably safe due to such defects; the design, methods of manufacture, and testing of the Defective Washing Machines did not conform to generally recognized and prevailing standards or the state of the art in existence at the time the design was made and the Defective Washing Machines were manufactured. At the time the Defective Washing Machines left Defendants' control, the foreseeable risks associated with the Defective Washing Machines' design exceeded the benefits associated with that design.

100.    Plaintiffs and Class members have suffered damages, including but not limited to, property damage and other incidental and consequential damages as a direct and proximate result of the Defective Washing Machines.

101.    Defendants acted with malice, oppression and/or fraud, and in conscious and flagrant disregard of the safety of their consumers, by manufacturing and/or selling the Defective Washing Machines known to them to be defective and unreasonably dangerous. As alleged, Defendants knew or should have known that the latent and inherent defects in the Defective Washing Machines would cause the machines to fail, flood, damage the Defective Washing Machine and other property, and/or threaten the personal safety of

consumers.  Defendants knew or were repeatedly informed of the serious defects in the Defective Washing Machines, yet failed to take any remedial action and instead continued to sell this defective product. Given Defendants' conscious disregard for the safety of the public, Plaintiffs and Class members seek exemplary or punitive damages.

**THIRD CAUSE OF ACTION**
*NEGLIGENCE AGAINST ALL DEFENDANTS*

102.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

103.    Samsung owed a duty to Plaintiffs and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Defective Washing Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class members from foreseeable and unreasonable risks of harm. Samsung breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Defective Washing Machines.

104.    The Retailers owed a duty to Plaintiffs and Class members to inspect, market, distribute, and sell the Defective Washing Machines with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class members from foreseeable and unreasonable risks of harm. The Retailers breached that duty by, among other things, failing to use reasonable care in inspecting, distributing, and marketing the Defective Washing Machines.

105.    Defendants unreasonably failed to provide appropriate and adequate warnings and instructions about the defective Washing Machines, and this failure was a

proximate cause of the harm for which damages are sought. In addition, at the time the Defective Washing Machines left their control, Defendants knew, or in the exercise of reasonable care should have known, the Defective Washing Machines posed a substantial risk of harm to the life and property of its customers. When the Defective Washing Machines left their control, Defendants knew, or in the exercise of reasonable care should have known, the Defective Washing Machines it designed, manufactured, produced, tested, and/or inspected, marketed, distributed, and/or sold, created an unreasonable safety risk and would fail to perform as intended.

106.    Samsung acted unreasonably in designing the Defective Washing Machines, and this conduct was a proximate cause of the harm for which damages are sought. Further, at the time the Defective Washing Machines left the control of Samsung, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Defective Washing Machines. Furthermore, at the time the Defective Washing Machines left the control of all Defendants, their design was so defective that a reasonable person, aware of the relevant facts, would not use or purchase a Defective Washing Machine of this design.

107.    Defendants knew, or in the exercise of reasonable care should have known, that the Defective Washing Machines created unreasonable safety risks. Defendants further knew, or in the exercise of reasonable care should have known, that the Defective Washing Machines could cause property damage and personal injury.

34

108.    Based on this knowledge, Defendants had a duty to disclose to Plaintiffs and Class members, the serious safety risks posed by the Defective Washing Machines and the defective nature of the Defective Washing Machines.

109.    Defendants had a further duty not to put the Defective Washing Machines on the market and has a continuing duty to replace the Defective Washing Machines, remove them from the market and seek an adequate recall or return of them from all consumers. Defendants have failed to do this in any meaningful way, and in fact, upon information and belief, the Defective Washing Machines can still be purchased from The Retailers today.

110.    Samsung failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Defective Washing Machines by, among other things, failing to design and manufacture the Defective Washing Machines in a manner ensuring that, under normal intended usage, they would not pose unreasonable risk to life and property.

111.    Defendants failed to exercise reasonable care in failing to warn, or to warn adequately and sufficiently, either directly or indirectly, Plaintiffs and Class members of the defects in the Defective Washing Machines.

112.    Defendants failed to exercise reasonable care when it knew of the safety risks the Defective Washing Machines posed and actively concealed those risks from Plaintiffs and Class members.

113.    Defendants failed to exercise reasonable care when it knew of the safety risks the Defective Washing Machines posed and failed to replace, repair or recall the Defective Washing Machines that it knew were unsafe and defective.

114.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members bought the Defective Washing Machines without knowledge of their defective nature or of their serious safety risks.

115.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members purchased unsafe products which could not be used for their intended use.

116.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members have suffered damages.

117.    Plaintiffs and Class members seek to recover the damage caused by Defendants.  Given Defendants' conscious disregard for the safety of Plaintiffs and Class members, they also seek an award of exemplary damages.

### FOURTH CAUSE OF ACTION
### *BREACH OF EXPRESS WARRANTY AGAINST SAMSUNG*

118.    Plaintiffs re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

119.    Samsung is, and at all times relevant was, a merchant with respect to washing machines.

120.    As set forth above, Samsung had knowledge of the defects alleged herein and that they pose serious safety risks to consumers like Plaintiffs and Class members.

121.    Despite that knowledge, at all times relevant, Samsung expressly warranted in writing that its Washing Machines were "warranted by SAMSUNG against manufacturing defects in materials and workmanship."

122.   In its warranty to customers, Samsung also warrants in writing that it provides the following warranties: one year parts and labor; two years control board parts; three years stainless steel tub part; and ten years motor components.

123.   The Defective Washing Machines have inadequate framing and dampening systems to withstand the extreme forces generated by the direct drive system that powers the machines' drums, often allowing the Defective Washing Machines to fail when the tub becomes disassembled from the frame during a machine's "explosion."  Moreover, the unbalanced load warning is defective in that it fails to stop the Defective Washing Machines' spin cycle before the machines shake apart.

124.   Alternatively, the limitations in Samsung's warranty are unconscionable as described herein.

125.   By selling Defective Washing Machines containing these defects to consumers like Plaintiffs and Class members after it gained knowledge of the defects, Samsung breached its express warranty to provide washing machines that were free from defects.

126.   Samsung also breached its express warranty to repair and correct material defects or component malfunctions in its Defective Washing Machines when it failed to do so despite knowledge of the known defects and despite knowledge of alternative designs, alternative materials, and options for retrofits.

127.   The limited warranty of repair for the Defective Washing Machines fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and

Class members whole and because Samsung has refused to provide the promised remedies within a reasonable time.

128.    Also, as alleged in more detail herein, at the time Samsung warranted and sold the Defective Washing Machines, it knew that the Defective Washing Machines did not conform to the warranties and were inherently defective, and Samsung wrongfully and fraudulently misrepresented and concealed material facts regarding its Defective Washing Machines.

129.    Accordingly, Plaintiffs and Class members are not limited to the limited warranty of "repair", and Plaintiffs and Class members seek all remedies allowed by law.

130.    As more fully detailed above, Samsung knew that Plaintiffs' washing machines were susceptible to malfunction but failed to provide defect-free washing machines to Plaintiffs or Class members, or to timely provide an adequate retrofit to remedy the Defective Washing Machines.

131.    Samsung was provided with notice, and has been on notice, of the defects and of its breach of express written warranties through its own internal and external testing, as well as hundreds or thousands of consumer warranty claims reporting malfunctions in the Defective Washing Machines, and customer complaints. Yet, Samsung failed to repair, replace, or retrofit the Defective Washing Machines to ensure they were free of materials defects or component malfunctions as Samsung promised.

132.    As a direct and proximate result of Samsung's breach of its express warranty, Plaintiffs and Class members have suffered damages.

133.    Samsung has been unjustly enriched by keeping the profits from the sale of its unsafe washing machines while never having to incur the cost of repair.

**FIFTH CAUSE OF ACTION**
*VIOLATIONS OF MAGNUSON-MOSS ACT*
*U.S.C. §§ 2301-2312)–WRITTEN WARRANTY AGAINST SAMSUNG*

134.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

135.    The Defective Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

136.    Plaintiffs and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

137.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

138.    Samsung provided Plaintiffs and Class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6).

139.    In its capacity as warrantor, and by the conduct described herein, any attempts by Samsung to limit the express warranties in a manner that would exclude coverage of the Defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Defective Washing Machines is null and void.

140.    All jurisdictional prerequisites have been satisfied.

141.    By Samsung's conduct as described herein, including Samsung's knowledge of the defective Washing Machines and their action, and inaction, in the face of that

knowledge, Samsung has failed to comply with its obligations under its written and implied promises, warranties, and representations.

142.    As a result of Samsung's breach of express warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Defective Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

### SIXTH CAUSE OF ACTION
*VIOLATIONS OF MAGNUSON-MOSS ACT*
*(15 U.S.C. §§ 2301-2312)—IMPLIED WARRANTY AGAINST ALL DEFENDANTS*

143.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

144.    Washing Machines are "consumer products," as that term is defined by 15 U.S.C. § 2301(1).

145.    Plaintiffs and Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

146.    Samsung is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

147.    Lowe's, The Home Depot, Best Buy, and Sears are "warrantors" as that term is defined by 15 U.S.C. § 2301(5).

148.    Defendants provided Plaintiffs and Class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

149.    In their capacity as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude

coverage of the Defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Defective Washing Machines is void.

150.    All jurisdictional prerequisites have been satisfied herein.

151.    By Defendants' conduct as described herein, including Defendants' knowledge of the defects contained within the Defective Washing Machines and their action, and inaction, in the face of that knowledge, Defendants have failed to comply with its obligations under their written and implied promises, warranties, and representations.

152.    As a result of Defendants' breach of implied warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Defective Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

**SEVENTH CAUSE OF ACTION**
*UNJUST ENRICHMENT AGAINST ALL DEFENDANTS*

153.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

154.    Defendants received, and continue to receive, proceeds from their sale of the Defective Washing Machines that were purchased by Plaintiffs and Class members for an amount far greater than the reasonable value of such machines because of such machines' defects.

155.    In exchange for the purchase price paid by Plaintiffs and Class members, Defendants provided the Defective Washing Machines that are likely to fail within their useful lives and pose a material risk of "exploding." There is no reasonable or acceptable

rate for washing machines to explode.   Such defects render the Defective Washing Machines unfit, and indeed unsafe, for their intended use.

156.   Plaintiffs and Class members reasonably believed that the Defective Washing Machines would function as advertised and warranted, and did not know, nor could they have known, that the Defective Washing Machines contained latent defects at the time of purchase.

157.   Defendants know of and appreciate the benefit conferred by Plaintiffs and the Class and have retained it notwithstanding their knowledge that the benefit is unjust.

158.   Under the circumstances, permitting Defendants to retain the proceeds and profits from the sales of the defective Washing Machines described herein would be unjust. Hence, Defendants should be required to disgorge this unjust enrichment.

## EIGHTH CAUSE OF ACTION
### *VIOLATION OF STATE CONSUMER PROTECTION LAWS AGAINST ALL DEFENDANTS*

159.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

160.   Defendants' deceptive trade practices in, *inter alia*, misrepresenting the quality and character of the Defective Washing Machines, and selling the Defective Washing Machines knowing same to be defective, violate the following state consumer statutes:

a.   The Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-19-5(2), (3), (5), (7), and (27), et seq.;

b.   The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471-45.50.561;

c.      The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

d.      The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), et seq.;

e.      The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, et seq.;

f.      The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), et seq.;

g.      The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), et seq.;

h.      The Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, et seq.;

i.      The District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), et seq.;

j.      The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), et seq.;

k.      The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (3), (5), and (7), et seq.;

l.      The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), et seq., and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), et seq.;

m.      The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), et seq., and Idaho Code § 48-603C, et seq.;

n.      The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, et seq., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. §§ 510/2(a)(5), (7) and (12), et seq.;

o.      The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), et seq.;

p.      The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, et seq.;

q.   The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), et seq.;

r.   The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.170(1) and (2), et seq.;

s.   The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), et seq.;

t.   The Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), et seq., and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, et seq.;

u.   The Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), et seq.;

v.   The Maryland Consumer Protection Act, Md. Code Commercial Law, §§ 13-301(1) and (2)(i)-(ii), and (iv), (5)(i), and (9)(i), et seq.;

w.   The Michigan Consumer Protection Act, M.C.P.L.A. §§ 445.903(1)(c)(e), (s) and (cc), et seq.;

x.   The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., and the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(a);

y.   The Mississippi Consumer Protect Act, Miss. Code Ann. §§ 75-24-5(1), (2)(b), (c), (e), and (g), et seq.;

z.   The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), et seq.;

aa.   The Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code Ann. § 30-14-103, et seq.;

bb. The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 591602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), et seq.;

cc. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0915(5) and (7), et seq.;

dd. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), et seq.;

ee. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, et seq.;

ff. The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, et seq.;

gg. The New York Business Law, N.Y. Gen. Bus. Law § 349(a);

hh. The Texas Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), et seq.;

ii. The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, et seq.;

jj. The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.02(A) and (B)(1) and (2), et seq.;

kk. The Oklahoma Consumer Protection Act, 15 O.S. §§ 753(5), (7) and (20), et seq.;

ll. The Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), et seq.;

mm. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, et seq.;

nn. The Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), et seq.;

oo. The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), et seq.;

pp. The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), et seq.;

qq. The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a), (b)(2), (3), (5), and (7), et seq.;

rr. The Texas Deceptive Trade Practices Consumer Protection Act, V.T.C.A., Bus. & C. §§ 17.46(a), (b)(5) and (7), et seq.;

ss. The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1), (2)(a), (b), and (i) et seq.;

tt. The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), et seq.;

uu. The Virgin Islands Consumer Protection Law, V.I. Code Ann. tit. 12A, § 101, et seq.;

vv. The Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-200(A)(5)(6) and (14), et seq.;

ww. The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, et seq.;

xx. The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, et seq.; and

yy. The Wyoming Consumer Protection Act, Wyo. Stat. Ann. §§ 40-12-105(a), (i), (iii) and (xv), et seq.

161. By this Cause of Action, Plaintiffs plead on behalf of the Class violations of all the foregoing consumer and deceptive trade practice laws.

## NINTH CAUSE OF ACTION
### *FRAUD AGAINST SAMSUNG*

162. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

163. Upon discovering that his Defective Washing Machine was subject to recall, Plaintiff Wells contacted Samsung to repair or replace the Defective Washing Machine. Samsung represented in their recall notice that they would repair any Defective Washing Machine free of charge to the consumers, including Plaintiffs.

164. The truth is that Samsung cannot repair the Defective Washing Machines. They can perform a retrofit that will reinforce the Defective Washing Machines, but it will

not allow consumers to use the Defective Washing Machines for the purposes for which they were advertised and purchased. As a result, Samsung is doing everything in its power to keep consumers from accepting the repair option, including scheduling repairs and then having them cancelled, failing to return phone calls for those who wish to schedule repairs, and other stalling tactics, in order to force consumers to accept the rebate option.

165.    Upon information and belief, Samsung had no intention of keeping their representation that they would repair the Defective Washing Machines, since it is in Samsung's financial interest to force Plaintiffs and other Class members to use Samsung's proffered rebate to purchase a new Samsung washing machine, or to use Samsung's proffered rebate of a lesser amount to purchase another brand of washing machine. Samsung is motivated by the fact that the cost of the rebate is, on information and belief, less expensive than the cost of repair to the Defective Washing Machines.

166.    In addition, Samsung is unable to repair the Defective Washing Machines. Even after the retrofit is done and the top of each washing machine is reinforced, consumers are still unable to use their washing machines as intended. As a result, upon information and belief, Samsung would owe every consumer who has their Recalled Washing Machine repaired a full refund or a new washing machine immediately after the repair has been completed. According to the CPSC, "[I]f your washer has any kind of problem after the recall fix, especially if it's because of the fix, you are due a full refund of what you paid for your machine." *See* http://www.click2houston.com/consumer/feds-say-samsung-not-following-consumer-product-safety-commission-agreement.

167. At the time Samsung made the representation that they would repair the Defective Washing Machines, they were fully aware of the cost savings Samsung would benefit from by "encouraging" owners of the Defective Washing Machines, including Plaintiffs, to take the proffered rebate rather than having their existing washing machine repaired. As a result, Samsung intentionally made it difficult, if not impossible, for Plaintiffs and other Class members to obtain repairs for their Defective Washing Machines, hoping consumers would choose to accept the rebate option instead of a repair.

168. Even after Samsung provides a repair and it does not fix the Defective Washing Machines, Samsung refuses to replace the Defective Washing Machines once a repair has been completed. Plaintiffs and Class members are simply left with a dangerous product that is unusable for its intended purpose.

169. As a result of Samsung's fraud, Plaintiffs and Class members are entitled to full compensation for the loss of their Defective Washing Machines, including time lost in seeking to have the Defective Washing Machines repaired, property damages, personal injury damages, and time and money spent finding other means to wash their belongings while they waited for Samsung to repair their Recalled Washing.

## TENTH CAUSE OF ACTION
### *DECEIT AGAINST ALL DEFENDANTS*

170. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

171. After discovering that the Defective Washing Machines were unfit for sale to, or use by, the public, Defendants continued to suggest and/or assert that the Defective

Washing Machines were fit for use by consumers. In addition, Defendants attempted to suppress the fact that the Defective Washing Machines were not fit to be used as advertised so that consumers would continue to purchase the Defective Washing Machines and Defendants could reap the rewards.

172.   Through their advertisements and sales tactics, Defendants promised consumers that Defective Washing Machines were suitable for residential use when in fact they were not.

173.   Following the Recall announcement, Samsung promised consumers that they would retrofit or repair the Recalled Washing Machines, thereby allowing the Defective Washing Machines to be used for the purposes for which they were marketed, when in fact, Samsung could not repair the Defective Washing Machines to these standards and therefore was intentionally promising consumers an act or result which they had no intention of performing.

174.   As a result of Defendants' deceit, Plaintiffs and the Class are entitled to full compensation for the loss of their Defective Washing Machines, including time lost in seeking to have the Defective Washing Machines repaired and time and money spent finding other means to wash their belongings while they could not use their Defective Washing Machines.

## ELEVENTH CAUSE OF ACTION

### *VIOLATION OF THE OKLAHOMA CONSUMER PROTECTION ACT, 15 O.S. §§ 753(5), (7), (12) AND (20), ET SEQ. ON BEHALF OF PLAINTIFFS AND THE OKLAHOMA SUBCLASS AGAINST ALL DEFENDANTS*

175.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

176.    Defendants unfairly, unconscionably, and deceptively advertised, marketed, sold, and represented the Defective Washing Machines as safe and effective to Plaintiffs and members of the Class.

177.    Before they advertised, marketed, represented and sold the Defective Washing Machines, Defendants knew or should have known of the defective nature and unreasonable dangers posed by the Defective Washing Machines.

178.    Plaintiffs and the Class purchased and used the Defective Washing Machines for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

179.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiffs and the Class would not have purchased and/or paid for the Defective Washing Machines and would not have incurred the related costs and injuries.

180.    Defendants engaged in the deceptive conduct while at the same time obtaining, under false pretenses, moneys from the injured Plaintiffs and Class that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

181.    Unfair methods of competition or deceptive acts or practices used by Defendants that were proscribed by law include the following:

    a. representing knowingly or with reason to know that the subject of a consumer transaction is of a particular standard, style, or model, if it is of another;

    b. advertising knowingly or with reason to know the subject of a consumer transaction with intent not to sell as advertised;

    c. making false or misleading statements of fact knowingly or with reason to know concerning the price of the subject of a consumer transaction or the reason for, existence of, or amounts of price reduction; and

    d. employing bait and switch advertising by offering a product or service which they did not intend to sell refusing to provide the product or service when requested;

15 O.S. § 753.

182. Plaintiffs and the Class were injured by the cumulative and indivisible nature of Defendants' conduct. The culmination of Defendants' conducted directed at Plaintiffs and the Class was to create demand for and sell the Defective Washing Machines. Each aspect of Defendants' conduct combined to artificially create sales of the Defective Washing Machines.

183. Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion, and sale of the Defective Washing Machines.

184. Had Defendants not engaged in the deceptive conduct described above, the injured Plaintiffs and Class would not have purchased and/or paid for the Defective Washing Machines and would not have suffered the related damages.

185. Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to Plaintiffs and the Class constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed.

186.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes.

187.    Under the statute listed above to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

188.    Defendants violated the statutes that were enacted in this state to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Defective Washing Machines were fit to be used for the purpose for which they were intended, when in fact the Defective Washing Machines were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

189.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the state statutes enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

190.    Defendants had actual knowledge of the defective and dangerous condition of the Defective Washing Machines and failed to take appropriate action to cure such defective and dangerous conditions.

191.   The injured Plaintiffs and the Class relied upon Defendants' misrepresentations and omissions in determining which washing machine to purchase.

192.   By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiffs and the Class have suffered ascertainable losses and damages.

193.   As a direct and proximate result of Defendants' violations of the state's consumer protection laws, the injured Plaintiffs and the Class have sustained economic losses and other damages and are entitled to statutory and compensatory, damages in an amount to be proven at trial.

194.   As specifically described in detail above, Defendants knew that the Defective Washing Machines were defective, could not perform for the purposes they were marketed or intended and were dangerous for use by Plaintiffs and the Class.

195.   As a direct and proximate result of Defendants' representations, Plaintiffs and the Class have experienced and/or will experience significant damages, including but not limited to physical injuries and the medical bills resulting therefrom, loss of the use of their Defective Washing Machines, time spent seeking to have their Defective Washing Machines replaced, and money spent renting a washing machine or using a laundromat while their Defective Washing Machine was unusable.

## TWELFTH CAUSE OF ACTION
### *DECLARATORY AND INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS*

196.   Plaintiffs re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

197.   There is a controversy in fact between Defendants and Plaintiffs and the Class concerning the existence of the defects in the Defective Washing Machines.

198.   Under 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Accordingly, Plaintiffs and the Class members seek a declaration that the Defective Washing Machines have common latent and inherent defects in their design and/or manufacture and a declaration that said defects pose a risk of serious harm to consumers and the public.

199.   Samsung designed, manufactured, produced, tested, inspected, marketed, distributed, and sold the Defective Washing Machines which contain latent, inherent, material, and dangerous defects as described in this Consolidated Complaint. Based on information and belief, Samsung continues to manufacture, produce, and inspect Defective Washing Machines which contain the defects described in this Consolidated Complaint.

200.   Based on information and belief, all Defendants continue to market, distribute, and sell Defective Washing Machines which contain the defects described in this Consolidated Complaint.

201.   At relevant times, each Defendant knew, or should have known, of the defects that exist at the point of sale of the Defective Washing Machines and render these machines unfit for use and unsafe to Plaintiffs, the Class members, and consumers in general.

202.    At <u>all</u> times relevant, Samsung knew, or should have known, of the defects that exist at the point of sale of the Defective Washing Machines and render these machines unfit for use and unsafe to Plaintiffs, the Class members, and consumers in general.

203.    Defendants have taken no action, or insufficient action, to correct the defects and/or stop the entry of the Defective Washing Machines into the stream of commerce. Defendants have failed to sufficiently warn the public of these latent and inherent defects and the safety risks they cause.

204.    As a result of Defendants failure to remedy the Defective Washing Machines either by repair or removal from the stream of commerce, Plaintiffs and members of the Class face a risk of injury to person and property.

205.    Plaintiffs and each Class member has suffered actual damage or injury, or are at immediate risk of doing so, due to the Defective Washing Machines. Defendants should be required to act to correct this situation, including:

a.   Permitting consumers to rescind their purchases;

b.   Issuing a nationwide recall of the Defective Washing Machines in order to remove them from the market and fully compensating Plaintiffs and members of the proposed Class;

c.   Discontinuing the manufacture, marketing, and distribution of the Defective Washing Machines;

d.   Discontinuing the destruction of evidence relevant to this and any other litigation related to the Defective Washing Machines;

e.  Making a full account of all evidence destroyed by Defendants since they were on notice of litigation related to the Defective Washing Machines; and

f.  Ensuring that all proposed Class members with whom Defendants interact are informed about the pendency of this litigation and their rights in relation to it.

**WHEREFORE,** Plaintiffs individually and on behalf of the above defined Class, by and through counsel, pray the Court grant the following relief:

A.  An Order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.  An Order appointing Plaintiffs as representative for the Class and appointing his counsel as lead counsel for the Class;

C.  An order awarding Plaintiffs and all other Class members damages in an amount to be determined at trial for the wrongful acts of Samsung described herein;

D.  An Order enjoining Samsung, Lowe's, The Home Depot, Best Buy, and Sears, their agents, successors, employees, and other representatives, from engaging in or continuing to engage in the manufacture (in the case of Samsung), marketing, and sale of the Defective Washing Machines; requiring Samsung, Lowe's, The Home Depot, Best Buy and Sears to issue corrective actions including notification, recall, service bulletins, and fully-covered replacement parts and labor, or replacement of the Defective Washing Machines; and requiring Defendants to preserve all evidence relevant to this lawsuit and to

notify Defective Washing Machine owners, with whom it comes in contact of the pendency of this and related litigation;

E.      A declaration that the Defective Washing Machines are, in fact, defective and pose a safety risk to consumers and the public;

F.      Restitution as authorized by law;

G.      Payment to the Class of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

H.      Payment to the Class of all damages associated with lost time in attempting to get Samsung to abide by the terms of the recall;

I.      Payment to the Class of all damages associated with the Class's inability to use their Defective Washing Machines such as fees from renting a washing machine or using a laundromat;

J.      An assessment of punitive damages, consistent with the actual harm Defendants have caused and the reprehensibility of their wanton and willful conduct, and the need to punish and deter such conduct;

K.      An order awarding attorney's fees pursuant to applicable Federal and State law;

L.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

M.      Any and all other and further relief as this Court deems just, equitable, or proper.

## JURY TRIAL DEMANDED

DATED: March 30, 2017                    Respectfully Submitted,


*/s/ William B. Federman*
William B. Federman (Bar No. 2853)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com


***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2017, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System. In addition, I hereby certify that on March 30, 2017, I transmitted the attached document to the following individuals via electronic mail:

Kenneth L. Chernof
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001
Telephone: 202.942.5000
Facsimile: 202.942.5999
kenneth.chernof@apks.com

Stewart D. Aaron
Susan L. Shin
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Telephone: 212.836.8000
Facsimile: 212.836.8689
stewart.aaron@apks.com
susan.shin@apks.com

*Counsel for Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Lowe's Companies, Inc., Lowe's Home Centers, LLC, Best Buy Company, Inc., & Sears Holding Corporation*

S. Stewart Haskins
KING & SPALDING LLP
1180 Peachtree Street, NE
Atlanta, Georgia 30309
shaskins@kslaw.com

*Counsel for The Home Depot, Inc.*

/s/ William B. Federman
William B. Federman